1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                    FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11  BEIJING TONG REN TANG (USA) CORP., a        Case No. C-09-00882-RMW
    California corporation,
12
                        Plaintiff,
13                                              ORDER GRANTING PLAINTIFF'S MOTION
                                                TO STRIKE AND GRANTING IN PART
    vs.                                         PLAINTIFF'S MOTION FOR PRELIMINARY
14                                              INJUNCTION
    TRT USA CORPORATION, a California
15  corporation, GUANGMING SUN aka              [Re Docket Nos. 6, 16, 30]
    GEORGE SUN, an individual, MEI XU, an
16  individual, PENGTAO ZHANG aka JOHN
    ZHANG, an individual,
17
                        Defendants.
18

19

20          Plaintiff Beijing Tong Ren Tang USA Corp. ("Beijing TRT") brings this action alleging

21  unfair competition, false designation of origin, and trademark infringement by defendants TRT USA

22  Corporation ("TRT USA"), and Guangming Sun ("Sun"), Mei Xu ("Xu"), and Pengtao Zhang

23  ("Zhang"), who are officers and directors of TRT USA. Beijing TRT now moves for a preliminary

24  injunction to enjoin defendants from using the trademarks of China Beijing Tongrentang Group

25  Co., Ltd ("China Beijing TRT Group"). Beijing TRT objects to and moves to strike portions of

26  Sun's declaration submitted in opposition to the motion for a preliminary injunction. For the

27  reasons stated below, the court grants the motion to strike and grants the motion for

28  preliminary injunction in limited respects.

# I. BACKGROUND

"Tongrentang" was established in 1669, and now, under the name "Tong Ren Tang," it is a well-known brand of traditional Chinese medicine. The rights to exploit the Tong Ren Tang brand are presently controlled by China Beijing TRT Group. It offers over 1,000 products in 26 forms. In the 1990s, China Beijing TRT Group began marketing its products outside of China, starting with Hong Kong and eventually expanding to many other countries including the United States, Canada, and the United Kingdom. As part of that expansion, China Beijing TRT Group owns three United States federally-registered trademarks, including the mark that appears on many of the products and marketing materials at issue in this suit, Registration No. 3535318 ("Tong Ren Tang Design Mark"). The Tong Ren Tang Design Mark includes a circular logo with Chinese calligraphy inside, and "Tong Ren Tang" appears below the circle in an arc. Declaration of Chuanli Zhou IS0 Mot. Prelim. Inj. Ex. A (hereinafter "Zhou Declaration")[1]

Plaintiff Beijing TRT was formed in 1999 and is a subsidiary of the China Beijing TRT Group. Beijing TRT aids in the marketing and distribution of Tong Ren Tang products in the United States. Chuanli Zhou is the manager of the U.S. operations for Beijing TRT. According to Zhou's declaration, Beijing TRT has made significant investments in selling and marketing Tong Ren Tang products in the U. S., including advertising in Chinese-language newspapers, attending trade shows, and visiting retailers in person. Zhou Decl. ¶ 18. Tong Ren Tang products are distributed widely throughout the United States, with the main markets being the San Francisco Bay Area, Los Angeles, New York, Seattle, New Jersey and Boston. *Id.* at ¶ 19. The total sales of Tong Ren Tang products in the U.S. over the last nine years total approximately $4,300,000.00. *Id.* at ¶ 20.

It is against this background that the events giving rise to the present dispute take place. Around 2004 Zhou and Juangming Sun of Advantage United Corporation began discussions

---

[1]The parties do not appear to dispute that Beijing TRT has the right to enforce whatever trademark rights China Beijing TRT Group has in its trademarks, presumably as the exclusive United States licensee of the trademarks. However, the court has not located specific evidence of such license but the issue of lack of standing to enforce has not been raised.

about cooperating on developing Tong Ren Tang-branded products for sale in the United States. In 2004, Sun was director of Advantage United Corporation, which changed its name to TRT USA in June of 2005 and is a defendant in this action. The parties dispute what occurred, but Beijing TRT and TRT USA entered into two agreements regarding their cooperation, one in 2005 and another in 2006. The parties disagree as to the proper translation of the agreements, each providing its own translation. Decl. of Phillip Yan Hing IS0 Reply Exs. A, B; Sun Decl. Ex. 1. Generally speaking, the agreements appear to provide that Beijing TRT and TRT USA will collaborate on producing and marketing a series of products for sale in the United States. The details of these agreements as they relate to the instant motion are discussed below.

Under the 2005 Agreement, Beijing TRT and TRT USA agreed to jointly developed a number of products. Beijing TRT began to receive orders for the jointly developed products in January of 2006, and was paid $6,000 by TRT USA from the net profits on those products. Zhou Decl. ¶¶ 35-36. In September of 2006, the parties terminated the 2005 agreement and entered into a new agreement (the 2006 agreement) providing for the joint development and sale of products. *Id.* at ¶ 37. Zhou states in his declaration that Beijing TRT and TRT USA following the execution of the 2006 agreement "did not end up jointly developing or jointly distributing any products, although we discussed many." *Id.* at ¶ 38. In his declaration, Sun disputes this claim, describing in some detail the process of developing a "Royal Ganoderma Ludicum" ("RDL") product. Sun states that Zhou approved the printing of the RGL package, called the container, label and package "good," and approved "TRT's proposed sales plan for the RGL product, including the price, marketing, and profit margin for the product. " Sun Decl. ¶¶ 17-21. In a declaration in support of Beijing TRT's reply, Zhou states that he never called the packaging "good" or approved any sales plan for the RGL product. Zhou Decl. IS0 Reply ¶¶ 21-22. According to Zhou, he and Sun had a "complete falling out" by June of 2008. Zhou Decl. ¶ 45.

On December 10, 2008, TRT filed suit in Santa Clara County Superior Court for breach

of contract and related actions. Sun Decl. ¶ 23. On February 24, 2009, Beijing TRT terminated the 2006 Cooperation Agreement as well as all other outstanding agreements that it had in place with TRT USA. Zhou Decl. ¶ 61. Plaintiff filed the instant suit on February 27, 2009, and moved for a preliminary injunction on March 13, 2009.

## II. ANALYSIS

### A.    The Motion to Strike and the Unclean Hands Defense

TRT USA opposes the motion for a preliminary injunction in part because of Beijing TRT's allegedly unclean hands. In support of the unclean hands defense, TRT USA offers three statements from the declaration of Sun alleging unethical and criminal conduct by Zhou. Beijing TRT objects to and moves to strike the three statements. TRT USA has not responded in writing to the motion to strike. Because the motion to strike relates to the substance of the unclean hands defense, the court considers them here together.

Unclean hands is a defense to a Lanharn Act infringement suit. *Japan Telecom, Inc. v. Japan Telcom America Inc.*, 287 F.3d 866, 870 (9th Cir. 2002). To prevail, the defendant must demonstrate that the plaintiff's conduct is inequitable, and that the conduct relates to the subject matter of its claims. *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 847 (9'h Cir. 1987). The nature of the required relationship to the subject matter is based on the principles of equity that underlie the doctrine of unclean hands. A plaintiff "who has violated conscience, good faith, or other equitable principles in his prior conduct, as well as [one] who has dirtied his hands in acquiring the right presently asserted" is barred from relief. *Dollar Systems, Inc. v. Avcar Leasing Systems, Inc.* , 890 F .2d 165, 173 (9th Cir . 1989).

In paragraph 25 of his declaration, Sun states that Zhou reported TRT USA's sales as Beijing TRT's revenue in order to boost Beijing TRT's sales volume, create the illusion that Beijing TRT was a thriving business, and induce the United States Citizenship and Immigration Services Bureau to provide Zhou with a green card. Sun Decl. ¶ 25. In paragraph 26, Sun states that Beijing TRT attempted to defraud the Food and Drug Administration by shipping mislabeled products to the United States before affixing accurate labels after the products arrived. *Id.* at ¶

26. Paragraph 27 states that Sun has been advised by business associates Guang Li Sun, president of Tianjin Wonderland International Company, and defendant Pengtao Zhang, that Zhou had threatened him. *Id.* at ¶ 27.

These allegations lack foundation, are not relevant to the trademark dispute, and are based on inadmissible hearsay. As for paragraph 25, Sun's declaration provides no basis for Sun having personal knowledge of the communications between Zhou and the Bureau of Citizenship and Immigration Services, nor are any documents provided in support of Sun's testimony. See Fed. R. Evid. 602. In addition, the allegations in paragraph 25 appear irrelevant to the instant trademark dispute and to defendants' unclean hands defense. The allegations in paragraph 26 also lack any basis for Sun's personal knowledge and appear unrelated to the present action. Finally, the threats that Sun describes in paragraph 27 were allegedly made by Zhou to his business associates, although disturbing, constitute blatant hearsay.

The motion to strike is therefore granted. Defendants have offered no admissible evidence in support of their unclean hands defense, and it is thus no bar to issuance of the preliminary injunction.

### B. Preliminary Injunction

#### 1. Standard for a Preliminary Injunction

A preliminary injunction in a trademark case requires either (1) a combination of probable success on the merits and the possibility of irreparable injury, or (2) the existence of serious questions going to the merits and that the balance of hardships tips sharply in plaintiffs favor. *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1 199, 1204-05 (9th Cir. 2000). In *Goto.com*, the court noted that because irreparable injury may be presumed from a showing of probable success on the merits for a trademark infringement claim, a plaintiff satisfies the first prong of this test by showing a likelihood of success on the merits. *Id.* at 1205 n. 4 (citing *Brooweld Communications, Inc. v. West Coast Entertainment Corp.*, 174 F.3d 1036, 1066 (9th Cir. 1999)).

#### 2. Likelihood of Success on the Merits

To show a likelihood of success on the merits on their trademark infringement claim, Beijing

TRT must show: (1) that it has a valid, protectable trademark, and (2) that TRT USA's use of the mark is likely to cause confusion. *Applied Information Sciences Corp. v. eBay, Inc.*, 51 1 F.3d 966, 969 (9th Cir. 2007). Registration of a mark with the Patent and Trademark Office constitutes prima facie evidence of the mark's validity and of the registrant's exclusive right to use the mark as specified in the registration. *Id.* at 970. Beijing TRT has provided registration certificates for three federal trademarks (Zhou Decl. Ex. A), and TRT USA does not contest the proper registration or protectability of these marks, nor that they are used on the challenged products.

The Ninth Circuit has developed eight factors, called the *Sleekcraft* factors, to guide the determination of a likelihood of confusion. *Goto.com* at 1205. Those factors are: (1) the strength of the mark; (2) proximity or relatedness of the goods; (3) the similarity of the marks; (4) evidence of actual confusion; (5) the marketing channels used; (6) the degree of care customers are likely to exercise in purchasing the goods; (7) the defendant's intent in selecting the mark; and (8) the likelihood of expansion into other markets. *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 408 F.3d 596,608 (9th Cir. 2005) (citing *AMF v. Sleekcraft Boats,* 599 F.2d 341, 348-49 (9th Cir. 1979)). Here, there is no dispute that the accused TRT USA products use a mark identical to the one owned by China Beijing TRT Group so an analysis of the italicized *SleekCraft* factors is not critical.

TRT USA argues that Beijing TRT cannot show a likelihood of confusion because: (1) TRT USA's use of the marks was authorized by Beijing TRT; 2) TRT USA's sales are protected under the first-sale doctrine; and 3) that Beijing TRT's requested relief is barred under the doctrine of laches.

### 3. Authorization to Use Beijing TRT's Marks

#### a. Use of the Mark in Advertisements and Marketing

Beijing TRT's motion for a preliminary injunction is based in part on use of the Tong Ren Tang Design Mark in advertisements, promotional materials, in-store displays, and business cards. Mot. for Prelim. Inj. 11-13. TRT USA does not address this basis for the preliminary injunction in its opposition, and Sun's declaration, although alluding to an approval

of marketing for the RGL product, does not address any other of these allegedly infringing uses of the Tong Ren Tang Design Mark.

TRT USA also argues that the preliminary injunction should not be issued under the doctrine of unclean hands, which the court has addressed above.

Samples of the allegedly infringing advertisements are attached to Zhou's declaration at Ex. J. A screen shot of the website appears in Ex. K. Part of the allegedly infringing in-store display is attached at Ex. L, as is a photograph of an allegedly infringing shopping bag. On the basis of this showing and the lack of opposition from TRT USA, Beijing TRT has demonstrated a probable chance of success on the merits as to advertising and uses of the Tong Ren Tang Design Mark.

### b.     Authorization to Sell Products

TRT USA's primary contention in opposition to the motion for a preliminary injunction is that the marks and goods in question have been produced and sold with Beijing TRT's authorization. In support of this agreement, TRT USA offers the declaration of Sun describing the past business dealings of TRT USA and Beijing TRT. Sun describes the two "Joint Venture" Agreements that Beijing TRT and TRT USA entered into in 2005 and 2006, respectively, as well as some other communication he had with Zhou. These agreements and the other communication, the Sun declaration states, constitute authorization to produce, sell, and market the TRT-branded products. TRT USA's Opp. to Prelim. Inj. 4.

The parties dispute whether the agreements are properly titled "Cooperation Agreements" or "Joint Venture Agreements," but the court does not find the distinction particularly significant. See Reply IS0 Prelim. In.. 5.

Neither the 2005 nor the 2006 Agreement conclusively authorizes TRT USA to produce, market, or sell any product. The 2005 Agreement does state that Beijing TRT "authorizes [TRT USA] to be the exclusive [sales/distribution] agent for Tong Ren Tang products at [traditional Chinese medicine] clinics throughout the United States." See Decl. of Phillip Yan Hing Wong IS0 Reply Ex. A (TRT USA translates the Chinese word at "sales/distribution" in

this quote as "sales. " Beijing TRT translates it as "distribution. "). But later, under "Duties of both parties," the Agreement states, "Duties of [Beijing TRT]: select required products and provide related data and heavy metals reports; work with [TRT USA] to carry out related product trials and laboratory inspection and testing; provide [TRT USA] with required support such as technical exchanges and media for news releases." Id. (emphasis added). The 2005 Agreement also provides: "For matters not covered by this agreement, both parties shall execute the necessary amendments and supplements before they come into force." Id. This agreement thus appears to designate TRT USA as the exclusive distributor of Tong Ren Tang-branded products that the parties would later develop, and Beijing TRT would select.

The 2006 Agreement includes similar provisions. Under "Scope of cooperation," it states that TRT USA "shall be the general exclusive agent to distribute the main Tong Ren Tang products that are brought into the U.S. market at various [traditional Chinese medicine] clinics, websites, and dedicated sales counters for Tong Ren Tang products at drugstores and supermarkets within the United States." *Id*. at Ex. B. Again, Beijing TRT has the responsibility under the 2006 Agreement to "select necessary products and provide relevant materials." *Id.*

The agreements appear to provide a framework on which the parties could develop, market, and sell products. But neither, standing alone, constitutes authorization by Beijing TRT for TRT USA to sell any particular products or to use any Tong Ren Tang trademark.

Sun's declaration also contains other allegations in support of TRT USA's contention that the product sales were authorized. The court notes that Sun's declaration does not include any clear allegation that Beijing TRT or Zhou authorized TRT USA to use the Tong Ren Tang trademarks and sell any particular jointly developed product. Rather, the authorization, if provided, appears to have been implied.

Sun alleges that, in 2006, when TRT USA was reorganized, that he, Zhou, and Zhang were the only shareholders and the three Directors of the Board of TRT USA. Sun Decl. 1 11. According to Zhou, Sun repeatedly asked him to become a director, but he refused. Zhou Decl. IS0 Reply 1 11-12 ("Zhou Reply Decl."). Zhou states that Sun asked him to sign a

document titled "TRT USA Corp. Resolutions of the First Board of Directors Meeting" but he refused. *Id*. (the document is attached to Zhou Reply Decl. Ex. C). Additionally, according to Statements of Information filed with the California Secretary of State, it appears that no one besides Mei Xu has ever been a director of TRT USA. Supp. Yang Decl. IS0 Reply Ex. D.

Sun next alleges that "[from about December 2006, TRT worked with BTU to develop a new product containing the fungus ganoderma ludicum (the 'RGL Product'). . . . The RGL Product was manufactured by Zhongxin Co., a manufacturer that was approved by Zhou. " Sun Decl. 1 ¶ 14. After some communication about the package design, Sun alleges that on "February 27, 2008, [Beijing TRT] issued written authorization to [TRT USA] to commence printing of the RGL package." *Id*. at 1 ¶ 17. The attached authorization does not mention the RGL Product, and indeed appears only to grant TRT USA general permission to print packaging, rather than to begin printing of the packaging for a particular product.

Sun also states that Zhou called the container and packaging of the RGL product "good" at a dinner in May 2008. *Id*. at 1 ¶ 19. Beijing TRT contends that Zhou did not make such a statement, and instead that Zhou objected to certain aspects of the packaging. Decl. of Renee Li IS0 Mot. Prelim. Inj. ¶¶ 2-4.

Sun next states that "[following Zhou's approval of the design of the container, label, and package for the RGL Product, TRT began distributing advertisements of the RGL Product to retail stores. Zhou approved TRT's proposed sales plan for the RGL Product, including the price, marketing, and profit margin for the product." Sun Decl. ¶ 20. Finally, Sun states that Zhou approved a label design for a "concentrated pills" product. *Id*. at ¶ 21. Beijing TRT contends that Zhou did not approve the plan or label design. In addition, the declaration provides no particular allegations as to the circumstances or the manner of approval.

In sum, TRT USA's evidence offered in opposition to the motion for a preliminary injunction provides little support for the view that TRT USA was authorized to use the Tong Ren Tang marks on products for sale and in advertising and marketing of any particular products. The allegations in Sun's declaration are often conclusory, and lack sufficient

evidentiary support. The court therefore concludes that Beijing TRT has demonstrated a probable success on the merits of its trademark infringement claim as to the use of the mark on packaging for unauthorized products actually sold or to be sold.

### 4. First-Sale Doctrine

TRT USA argues that the first-sale doctrine bars relief. Under the first-sale doctrine, "resale by the first purchaser of the original article under the producer's trademark is neither trademark infringement nor unfair competition." *Sebastian Intern., Inc. v. Longs Drug Stores Corp.*, 53 F.3d 1073, 1074 (91h Cir. 1999). In other words, "the right of a producer to control distribution of its trademarked product does not extend beyond the first sale of the product." *Id.*

In this case, Beijing TRT challenges not subsequent sales of genuine, approved goods, but the initial sale and marketing of goods bearing Beijing TRT's trademarks. That is, Beijing TRT here challenges the first sale. TRT USA's argument appears to assume that the goods were sold with Beijing TRT's authorization, which the court considered above. The first-sale doctrine therefore does not bar issuance of the preliminary injunction.

### 5. Laches

TRT USA argues that the doctrine of laches bars entry of an order barring TRT USA from using "TRT" as part of its corporate name. TRT USA states that laches bars "much of the injunctive relief" sought by Beijing TRT. Because TRT USA does not dispute that Beijing TRT did not discover the allegedly infringing sales until late 2008, and because TRT USA focuses on the corporate name of TRT USA in its opposition, the court will limit its consideration of laches to that issue.

Laches can bar recovery in trademark actions where injunctive relief is sought. *E-Systems, Inc. v. Monitek, Inc.*, 720 F.2d 604, 607 (9th Cir. 1983). For laches to apply, the passage of time must be accompanied by circumstances which estop plaintiff from obtaining injunctive relief. *Id.* Monitek also lists six factors that the court can consider in determining whether laches will bar relief: "1. strength and value of trademark rights asserted; 2. plaintiff's diligence in

enforcing mark; 3. harm to senior user if relief denied; 4. good faith ignorance by junior user; 5. competition between senior and junior users; and 6. extent of harm suffered by junior user because of senior user's delay. " *Id*.

Zhou states in his declaration that Sun asked him in September of 2005 whether Sun could change his company's name from AUC to TRT USA. Zhou Decl. ¶ 29. In October of 2005, Beijing TRT filed an application on TRT USA's behalf to register TRT USA with the FDA. Although the 2005 Agreement lists Advantage United Corp. as "Party B," the 2006 Agreement is between Beijing TRT and TRT USA. Furthermore, it seems that TRT does possess some inventory of genuine Tong Ren Tang products that Beijing TRT does not object to TRT USA selling. See Reply IS0 Mot. Prelim. Inj. 14. It does appear that, in the particular case of TRT USA using "TRT" in its corporate name, Beijing TRT has been aware of the alleged infringement, has continued business dealings, and did not file suit for approximately three years. Beijing TRT has therefore not raised a sufficient likelihood of success on the merits to warrant a preliminary injunction ordering TRT USA to change its corporate name.

Plaintiff has sufficiently shown potential irreparable injury to China Beijing TRT Group and Beijing TRT from the advertising or sale by TRT USA of fake or unauthorized product using the TONG REN TANG trademark or any other designation similar or likely to be confused with TONG REN TANG trademarks. Plaintiff has the right to control the nature and quality of the products utilizing the Tong Ren Tang products which could be seriously impaired if TRT USA were allowed to use the trademarks in connection with goods not manufactured by or on behalf of Beijing TRT. Plaintiff has also shown the potential for irreparable injury if TRT USA is allowed to represent that it is an exclusive or authorized distributor of Tong Ren Tang products or that TRT USA Corporation is currently associated with plaintiff or China Beijing Tong Ren Tang Group Co.

## C.    Preliminary Injunction Order

The court concludes that Beijing TRT has established a sufficient likelihood of success on the merits to warrant a preliminary injunction enjoining TRT USA from the activities described in

the accompanying Preliminary Injunction Order.  However, Beijing TRT has not made a sufficient showing to justify preliminarily enjoining TRT USA from attempting to register its own trademarks, from using "TRT" as a part of its corporate name, or from using the www.trtusa.com domain name.

Although the parties have a legal obligation to retain documents relevant to the lawsuits between them, Beijing TRT has not shown that there has been any threat of destruction warranting a preliminary injunction requiring retention.

The court finds that given the alleged value of the products TRT USA has in unsold inventory, a bond of $100,000 is appropriate as security for the preliminary injunction.

For the reasons stated above, the court grants Beijing TRT's motion to strike and grants in part its request for a preliminary injunction as set forth above and in the form of the accompanying preliminary injunction.


DATED:        12/18/09

_____
RONALD M. WHYTE
United States District Judge

**Notice of this document has been electronically sent to:**

**Counsel for Plaintiff:**

Jennifer Lee Taylor          JLeeTaylor@mofo.com
Mimi Yang                    mimiyang@mofo.com
Suzan Yee                    syee@tsaochow.com
Teddy Tsao-Wu                ttsaowu@tsaochow.com
William James Taylor         wtaylor@tsaochow.com

**Counsel for Defendants:**

J. James Li                  lij@gtlaw.com

Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

**Dated:**   12/18/09              _____CCL_____

                                   **Chambers of Judge Whyte**