**E-FILED on**    6/2/10

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| BEIJING TONG REN TANG (USA), CORP., a California corporation,<br><br>        Plaintiff,<br><br>    v.<br><br>TRT USA CORPORATION, a California corporation, GUANGMING SUN aka GEORGE SUN, an individual, MEI XU, an individual, PENGTAO ZHANG aka JOHN ZHANG, an individual,<br><br>        Defendants.<br>_____<br>TRT USA CORPORATION, a California corporation, GUANGMING SUN, an individual, MEI XU, an individual, PENGTAO ZHANG, an individual,<br><br>        Counter-Claimants,<br><br>    v.<br><br>BEIJING TONG REN TANG (USA), CORP., a California corporation, CHUANLI ZHOU, an individual,<br><br>        Counter-Defendants. | No. C-09-00882 RMW<br><br>ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF AND COUNTER-DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT<br><br>**[Re Docket No. 126]** |

Plaintiff and counter-defendant Beijing Tong Ren Tang USA Corp. ("Beijing TRT") and counter-defendant Chuanli Zhou move for partial summary judgment. For the reasons set forth below, the court grants the motion in part and denies the motion in part.

## I. BACKGROUND

Beijing TRT entered into a written agreement with Advantage United Corp., the predecessor of defendant and counter-claimant TRT USA Corp. ("TRT USA"), in 2005 to cooperate in selling traditional Chinese medicine in the United States. Dkt. No. 128 Ex. A. On September 28, 2006, the parties entered into a new written agreement, superseding the 2005 agreement. *Id.* Ex. B ("2006 Agreement"). Under the terms of the 2006 Agreement, TRT USA was to be "the general exclusive agent to distribute the main Tong Ren Tang products that are brought into the U.S. market at various TCM [traditional Chinese medicine] clinics, websites, and dedicated sales counters for Tong Ren Tang products at drugstores and supermarkets within the U.S." *Id.* § IV.

The parties' business relationship soured, resulting in two lawsuits. On December 10, 2008, TRT USA filed a complaint in state court against Beijing TRT. On February 27, 2009, Beijing TRT filed the instant action in federal court against TRT USA and three of its officers and directors, Guangming Sun, Mei Xu, and Pengtao Zhang, alleging violations of the Lanham Act (unfair competition, false designation of origin, false advertising), various state law violations (unfair business competition, deceptive, false, and misleading advertising), and common law claims for trademark infringement and unfair competition. TRT USA and the three individual defendants filed a Second Amended Counterclaim ("SAC") against Beijing TRT and Zhou, alleging fraud, breach of fiduciary duty, misappropriation of trade secrets, defamation and trade libel, and intentional infliction of emotional distress.

## II. ANALYSIS

Beijing TRT and Zhou move for partial summary judgment that: (1) certain categories of Tong Ren Tang product sales were unauthorized and constitute unfair competition under the Lanham Act; (2) the fraud claims in the SAC relating to regulatory compliance and exclusive agency are barred by California's parol evidence rule and lack the element of justifiable reliance; (3) Beijing TRT and Zhou were not TRT USA shareholders; and (4) Beijing TRT and Zhou were not directors

of TRT USA, and thus the claim for breach of fiduciary duty in the SAC fails for lack of a fiduciary relationship.

**A.     Allegedly Unauthorized Sales**

According to Beijing TRT, the following three categories of sales were unauthorized and constitute unfair competition under the Lanham Act: (1) sales of Royal Ganoderma Ludicum, a product containing the fungus ganoderma ludicum ("RGL Product Sales"), (2) sales of the second batch of jointly developed concentrated ball products ("Second Batch Sales"), and (3) sales that occurred after Beijing TRT terminated its agreement with TRT USA ("Post-Termination Sales"). Beijing TRT contends that no reasonable jury could find these sales to be authorized because the parties never entered into a written agreement permitting TRT USA to engage in these sales.

The 2006 Agreement authorizes TRT USA to "[p]erform exclusive sales within the U.S. of new products (accredited by Tong Ren Tang and compliant with the relevant U.S. laws and regulations) that are developed through the cooperation of both parties."  2006 Agreement § V.2. TRT USA contends that this provision authorizes both the RGL Product Sales and the Second Batch Sales because the products sold were jointly developed by the parties.  Beijing TRT appears to agree that the RGL Product Sales and the Second Batch Sales constitute sales of new, jointly developed products but argues that such sales were not authorized under the 2006 Agreement because the agreement leaves the profit distribution for sales of new, jointly developed products to be separately negotiated.  *See id.* § VII.2.  The court disagrees.  The 2006 Agreement contemplates both TRT USA carrying out sales of new, jointly developed products, and the parties separately negotiating the profit distribution for these sales.  *See id.* §§ V.2, VII.2.  There is no language in the contract suggesting that TRT USA's right to sell these products is contingent upon first reaching an agreement with Beijing TRT regarding profit distribution.  Therefore, the 2006 Agreement authorizes TRT USA to carry out both the RGL Product Sales and the Second Batch Sales.

As for the Post-Termination Sales, Beijing TRT argues that TRT USA was no longer authorized to sell Tong Ren Tang products after Beijing TRT terminated the 2006 Agreement in February 2009.  In response, TRT contends that Beijing TRT did not have the right to unilaterally terminate the 2006 Agreement.  The 2006 Agreement provides for a five-year term of cooperation

between Beijing TRT and TRT USA. *See* 2006 Agreement § III. The contract does not contain any provision for terminating this agreement prior to the end of the five-year term. Instead, the 2006 Agreement provides both parties with only "the rights to settle any loss resulting from breach of this agreement through friendly discussion or in accordance with the relevant US laws and regulations." *Id.* § XIII.

Beijing TRT argues that it had the right to terminate the 2006 Agreement because TRT USA breached the contract. Under the terms of the 2006 Agreement, TRT USA was required to purchase specified dollar amounts of products from Beijing TRT every year. 2006 Agreement § IV. It is undisputed that TRT USA did not meet its obligation of purchasing from Beijing TRT the annual product quotas required by the 2006 Agreement. *See* Dkt. No. 128 Ex. M ("Sun Dep.") 56:12-57:15. However, under California law, a breach of contract does not automatically give rise to a right to terminate the contract. A party to a contract may rescind the contract only if certain conditions are met, such as where "the consideration for the obligation of the rescinding party fails, in whole or in part, through the fault of the party as to whom he rescinds," or "the consideration for the obligation of the rescinding party, before it is rendered to him, fails in a material respect from any cause." Cal. Civ. Code §§ 1689(b)(2),(4). Beijing TRT has not established that TRT USA's breach satisfies any of the conditions triggering a right to rescind. Moreover, for rescission to be effective, the rescinding party must "promptly upon discovering the facts which entitle him to rescind . . . (a) give notice of rescission to the party as to whom he rescinds; and (b) restore to the other party everything of value which he has received from him under the contract or offer to restore the same upon condition that the other party do likewise unless the latter is unable or positively refuses to do so." Cal. Civ. Code § 1691. TRT failed to meet the annual purchasing quotas every year, beginning in 2006 or 2007. *See* Sun Dep. 56:12-57:15. Yet Beijing TRT did not seek termination of the contract until February 2009. Furthermore, Beijing TRT has not shown that it has restored or offered to restore TRT USA to status quo.

As the party bearing the burden of proof on the Lanham Act claim at trial, Beijing TRT "must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *C.A.R. Transp. Brokerage Co., Inc. v. Darden Restaurants, Inc.*, 213 F.3d

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF AND COUNTER-DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT—No. C-09-00882 RMW
CCL                                         4

474, 480 (9th Cir. 2000) (quoting *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992)). Beijing TRT has failed to meet this standard. The court therefore denies its motion for partial summary judgment that the RGL Product Sales, Second Batch Sales, and Post-Termination Sales were unauthorized and constitute unfair competition under the Lanham Act.

### B. Fraud Claims

TRT USA alleges that Beijing TRT and Zhou committed fraud in numerous ways, including by falsely promising TRT USA an exclusive general distributorship in the United States market and by falsely promising to ensure compliance with all relevant United States laws and regulations. *See* SAC ¶¶ 44-46. Beijing TRT contends that TRT USA's fraud claims, to the extent they are based on allegations of false promises of exclusive agency and regulatory compliance, are barred by the parol evidence rule and lack the element of justifiable reliance.

Under the parol evidence rule, "[t]erms set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement." Cal. Code Civ. Proc. § 1856(a). The 2006 Agreement provides that "[a]ny matter not included in this agreement shall come into force through modification or supplemental agreement made by both parties." 2006 Agreement § XIII. This language makes clear that the parties intended for the written contract to be a final expression of their agreement regarding cooperation for selling traditional Chinese medicine in the United States. Therefore, the parol evidence rule bars consideration of evidence of prior agreements or contemporaneous oral agreements that contradict the terms of the 2006 Agreement.

In order to prove fraudulent deceit, one must establish: misrepresentation, knowledge of falsity, intent to induce reliance, justifiable reliance, and resulting damages. *See Zinn v. Ex-Cell-O Corp.*, 148 Cal. App. 2d 56, 68 (1957). Beijing TRT contends that no reasonable jury could find that TRT USA justifiably relied upon oral representations that contradicted the written terms of the 2006 Agreement.

### 1. Regulatory Compliance

The 2006 Agreement clearly states that TRT USA, not Beijing TRT, is "responsible for the work related to . . . customs clearance for the products at the US customs and FDA and other governmental departments." 2006 Agreement § IX.2. Thus, any evidence of prior agreements or contemporaneous oral agreements contradicting this provision is barred by the parol evidence rule. TRT USA has failed to present any admissible evidence that Beijing TRT, rather than TRT USA, promised to take responsibility for FDA compliance and customs clearance. Accordingly, the court dismisses TRT USA's fraud claim against Beijing TRT to the extent it is based on false promises relating to regulatory compliance.

However, TRT USA has raised a genuine issue of material fact regarding its fraud claim against Zhou based on his alleged false promise to ensure regulatory compliance. TRT USA has offered evidence that Zhou agreed to take responsibility for FDA compliance and customs clearance in his capacity as a director of TRT USA.[1] *See* Dkt. No. 143 ("Sun Decl.") ¶ 34; Dkt. No. 147 ("Li Decl.") Ex. A at 150. This evidence is not barred by the parol evidence rule because it does not contradict the terms of the 2006 Agreement. Moreover, because Zhou's alleged promise to personally take responsibility for regulatory compliance as a director of TRT USA does not contradict the terms of the 2006 Agreement, a reasonable jury could find justifiable reliance.

### 2. Exclusive Agency

The 2006 Agreement states that TRT USA "shall be the general exclusive agent to distribute the main Tong Ren Tang products that are brought into the U.S. market at various TCM [traditional Chinese medicine] clinics, websites, and dedicated sales counters for Tong Ren Tang products at drugstores and supermarkets within the U.S." 2006 Agreement § V.1. Under this provision, it is clear that TRT USA is entitled to be the exclusive general distributor for "main Tong Ren Tang products" within three market segments in the United States: traditional Chinese medicine clinics,

---

[1] At the hearing on May 28, 2010, TRT USA argued that Zhou's promise to take responsibility for regulatory compliance was made on behalf of Beijing TRT. However, TRT USA has not offered any admissible evidence supporting this claim. The job description document simply states that Zhou is in charge of customs clearance and relevant FDA issues; it makes no mention of Beijing TRT. *See* Dkt. No. 147 Ex. A at 150.

1 websites, and dedicated sales counters at drugstores and supermarkets. The parties agree that non-traditional Tong Ren Tang products, such as cosmetics and beauty supplies, are outside the scope of "main Tong Ren Tang products." *See* Dkt. No. 142 ("Zhang Decl.") ¶ 10. However, the parties dispute whether TRT USA is entitled to a general exclusive distributorship over all channels of distribution in the United States or just the three market segments listed. In addition, the parties dispute whether ginseng stores fall within the scope of "drugstores" as used in the contract.

Beijing TRT relies solely on the language in the 2006 Agreement as supporting their contention that TRT USA's exclusive agency is limited to the three listed market segments and does not include ginseng stores. TRT USA offers extrinsic evidence to support its interpretation of the contract. Though the parol evidence rule prevents the introduction of extrinsic evidence contradicting the terms set forth in a written contract, extrinsic evidence is admissible to explain the meaning of such terms so long as the language in the contract is reasonably susceptible to the proffered interpretation. *See Pacific Gas & Elec. Co. v. G. W. Thomas Drayage & Rigging Co., Inc.*, 69 Cal. 2d 33, 37 (1968). Accordingly, if the language in the 2006 Agreement is reasonably susceptible to the interpretation suggested by the extrinsic evidence offered by TRT USA, then the extrinsic evidence is admissible.

TRT USA offers evidence that traditional Chinese medicine drugstores are commonly referred to as ginseng stores. *See* Sun Decl. ¶ 14. The language in the 2006 Agreement is reasonably susceptible to interpreting "drugstores" as including ginseng stores. Moreover, Beijing TRT has not offered any evidence suggesting that this interpretation is incorrect. The court therefore concludes that the term "drugstores," as used in the 2006 Agreement, may include ginseng stores.

To support its contention that the exclusive agency provision provides TRT USA with exclusivity in all distribution channels in the United States, not just the channels listed, TRT USA offers: (1) Sun's declaration that the three market segments identified in the 2006 Agreement were the only distribution channels contemplated at the time the parties entered into the contract; and (2) communications prior to the 2006 Agreement showing that TRT USA wanted general exclusive agency in order to prevent free-riding on its investment in marketing Tong Ren Tang products and to

carry out a plan for Market Rectification and Integration. *See* Sun Decl. ¶ 30; Dkt. No. 142 ("Zhang Decl.") ¶ 8; Li Decl. Ex. A at 11, 124. Having considered this evidence, the court finds that the language in the 2006 Agreement is not reasonably susceptible to an interpretation that grants TRT USA general exclusive agency extending beyond the three listed market segments. Thus, the extrinsic evidence is inadmissible, and TRT USA cannot establish justifiable reliance for its belief that it had an exclusive distributorship over all channels of distribution.

The provision for exclusivity over main Tong Ren Tang products lists three specific market segments, suggesting that TRT USA's exclusivity is limited to these market segments. 2006 Agreement § V.1. In contrast, the provision for exclusivity over new, jointly developed products is worded broadly, allowing "exclusive sales within the U.S. of new products," without any limitation to particular market segments. *Id.* § V.2. In light of the different wording for these two provisions, the court concludes that the contract limits TRT USA's general exclusive agency over main Tong Ren Tang products to the three identified market segments.

Beijing TRT appears to suggest that TRT USA's fraud claim based on exclusive agency should be dismissed as a result. However, based on the existing record, it is not clear to the court that a finding of fraud is necessarily precluded. TRT USA alleges that Beijing TRT entered into sales contracts and continued to sell Tong Ren Tang products for which TRT USA had been promised an exclusive distributorship. SAC ¶ 45. Beijing TRT has not shown that these sales were outside the three market segments for which TRT USA was promised an exclusive distributorship under the terms of the 2006 Agreement. Thus, a genuine issue of material fact remains regarding whether Beijing TRT breached its limited promise of exclusivity.

### 3. Individual Counter-Claimants

The SAC also contains allegations of fraud by Sun, Xu, and Zhang against Beijing TRT and Zhou. *See* SAC ¶¶ 65-71. The court dismissed these fraud claims by individual counter-claimants with prejudice in an order issued on March 8, 2010. *See* Dkt. No. 109 at 3. These claims are therefore dismissed.

### C.  Shareholder Status

The SAC alleges that Zhou, acting on behalf of Beijing TRT, was a shareholder of TRT USA.  SAC ¶¶ 73, 77.  Beijing TRT and Zhou argue that neither of them could be found to be shareholders of TRT USA because: (1) no consideration was paid for the shares, and (2) there was no acceptance of the shares.  For shares to be issued by a corporation, there must be consideration.  *See* Cal. Corp. Code § 409(a)(1).  Moreover, for a party to become a shareholder, he must have accepted the shares and consented to becoming a shareholder.  *See California Nat'l Supply Co. v. O'Brien*, 51 Cal. App. 606, 622 (1921).

It is undisputed that Zhou held a 50% interest in TRT USA on behalf of Beijing TRT prior to the reorganization in 2006.  *See* Dkt. No. 144 ("Xu Decl.") ¶ 12; Li Decl. Ex. A at 13.  In 2006, Zhang invested $200,000 for 35% of the shares of TRT USA, diluting Beijing TRT and Sun's shares in TRT USA to 32.5% each.  *See* Xu Decl. ¶ 24.  Xu testified that Beijing TRT received shares in the newly reorganized TRT USA in exchange for agreeing to award TRT USA general exclusive agency for sales of Tong Ren Tang products in the United States and for its expertise in regulatory compliance issues.  *See* Dkt. No. 144 ("Xu Decl.") ¶ 24.  Though Beijing TRT is correct that shares may not be issued in exchange for future services, they may be issued for services rendered in the formation or reorganization of a corporation.  *See* Cal. Corp. Code § 409(a)(1).  Moreover, it appears that, in exchange for shares in the newly reorganized TRT USA, Beijing TRT returned the shares it had previously been issued in 2005.  *See* Xu Decl. ¶ 32.  Therefore, TRT USA has offered sufficient evidence to raise a genuine issue of material fact regarding whether consideration was paid for the shares issued to Beijing TRT.  TRT USA has also offered sufficient evidence to raise a genuine issue of material fact regarding whether Zhou, acting on behalf of Beijing TRT, consented to accepting these shares.  *See* Xu Decl. ¶ 32 (testifying that Zhou accepted the share certificate); Zhang Decl. ¶ 14 (same).

### D.  Director Status

The SAC also alleges that Zhou, acting on behalf of Beijing TRT, was a member of the board of directors of TRT USA.  SAC ¶¶ 73, 77.  Beijing TRT and Zhou contend that neither of them could be found to be directors of TRT USA because TRT USA's annual registration statements

do not name either of them as directors. Corporations are required to file an annual statement with the Secretary of State that names each incumbent director. Cal. Corp. Code § 1502(a). The corporation must certify that the information it provides in this statement is true and correct. *Id.* § 1502(j). It is undisputed that neither Zhou nor Beijing TRT have ever been listed as directors in any of TRT USA's annual statements to the California Secretary of State. According to Beijing TRT, TRT USA's representations in these statements are binding as judicial admissions.

Judicial admissions "have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact." *American Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988) (quoting *In re Fordson Eng'g Corp.*, 25 Bankr. 506, 509 (Bankr. E.D. Mich. 1982)). "Factual assertions in pleadings . . . are considered judicial admissions conclusively binding on the party who made them." *Id.* Statements made in briefs, however, may or may not be treated as binding judicial admissions. *Id.* at 227. Beijing TRT has not pointed to, and the court is not aware of, any cases suggesting that statements made outside the context of judicial proceedings are conclusively binding as judicial admissions. Therefore, the court considers TRT USA's annual registration statements to the California Secretary of State to be extra-judicial admissions, having evidentiary value but not conclusively binding.[2]

TRT USA concedes that neither Zhou nor Beijing TRT have ever been listed as directors on its annual registration statements but explains that, as a small company, it has often failed to comply with corporate formalities. *See* Xu Decl. ¶ 39. To corroborate this claim, TRT USA points to discrepancies between the registration statements and a board resolution. According to annual registration statements, Xu owns 100% of TRT USA; however, a September 28, 2006 board resolution shows that Zhang owns 35% of TRT USA, and Sun owns 32.5% of TRT USA. *See* Li Decl. Ex. A at 88. The board resolution, which is signed by Zhang, Sun, and Zhou, also states that Zhou is to be a member of the board as a "special director." *Id.* TRT USA relies upon this board

---

[2] Even when there is a technically deficient election or appointment of a person to the position of director, if "no stockholder objects or takes legal proceedings to test the right to the office, and such person is allowed to perform the duties of his office, he becomes an officer de facto." *Consumers Salt Co. v. Riggins*, 208 Cal. 537, 540 (1929). The director may not later object that he was not legally appointed or elected to his position and collaterally attack his title to office. *See id.* at 540-41.

resolution, along with various emails discussing drafts of the board resolution and board minutes showing that Zhou participated in director meetings, to support its claim that Zhou was a director of TRT USA. *See id.* at 163, 168; Sun Decl. ¶ 11.

Beijing TRT contends that Zhou's alleged signature on the September 28, 2006 board resolution is a forgery and provides a declaration by a forensic document examiner to that effect. *See* Dkt. No. 129 ("Fisher Decl.") ¶ 5. In response, TRT USA offers a report by another forensic document examiner, which concludes that Zhou "probably did write the [disputed] signatures with some effort to disguise his typical signature style." Dkt. No. 145 ("Blanco Decl.") Ex. A at 6. In light of these conflicting findings regarding the authenticity of the board resolution, TRT USA's annual statements to the California Secretary of State, and evidence that Zhou participated in director meetings, the court finds that there is a genuine issue of material fact as to whether Zhou, acting on behalf of Beijing TRT, was a director of TRT USA.

### III. ORDER

For the foregoing reasons, the court's ruling is as follows:

1. The 2006 Agreement authorizes TRT USA to carry out both the RGL Product Sales and the Second Batch Sales. A genuine issue of material fact remains regarding whether the Post-Termination Sales were authorized.

2. TRT USA, not Beijing TRT, was responsible for regulatory compliance matters. Thus, TRT USA's fraud claim against Beijing TRT, to the extent it is based on false promises relating to regulatory compliance, is dismissed. A genuine issue of material fact remains regarding TRT USA's fraud claim against Zhou based on his alleged false promise to ensure regulatory compliance.

3. TRT USA's general exclusive agency is limited to distributing main Tong Ren Tang products in the following three market segments: traditional Chinese medicine clinics, websites, and dedicated sales counters at drugstores and supermarkets. Ginseng stores are included within the scope of drugstores. A genuine issue of material fact remains regarding whether Beijing TRT breached this exclusivity agreement.

4. The fraud claims asserted by individual counter-claimants Sun, Xu, and Zhang are dismissed.

5. A genuine issue of material fact remains regarding whether Zhou, acting on behalf of Beijing TRT, was a shareholder and a director of TRT USA.

DATED:     6/2/10

*Ronald M. Whyte*
RONALD M. WHYTE
United States District Judge

**Notice of this document has been electronically sent to:**

**Counsel for Plaintiff:**

Suzan Yee              syee@tsaochow.com
William James Taylor   wtaylor@tsaochow.com
Teddy Tsao-Wu          ttsaowu@tsaochow.com

**Counsel for Defendants:**

J. James Li            lij@gtlaw.com

**Counsel for Creditor:**

Jingming James Cai     jcai@sacattorneys.com

Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

**Dated:**     6/2/10                                    CCL
                                              **Chambers of Judge Whyte**