**E-FILED on** 11/23/2011

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| BEIJING TONG REN TANG (USA), CORP., a California corporation,<br><br>        Plaintiff,<br><br>    v.<br><br>TRT USA CORPORATION, a California corporation, GUANGMING SUN aka GEORGE SUN, an individual, MEI XU, an individual, PENGTAO ZHANG aka JOHN ZHANG, an individual,<br><br>        Defendants.<br>_____<br>TRT USA CORPORATION, a California corporation, GUANGMING SUN, an individual, MEI XU, an individual, PENGTAO ZHANG, an individual,<br><br>        Counter-Claimants,<br><br>    v.<br><br>BEIJING TONG REN TANG (USA), CORP., a California corporation, CHUANLI ZHOU, an individual,<br><br>        Counter-Defendants. | No. C-09-00882 RMW<br><br>ORDER ON RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW AND FOR NEW TRIAL<br><br>**[Re Docket Nos. 259 and 291]** |

United States District Court
For the Northern District of California

Plaintiff Beijing Tong Ren Tang USA Corp. ("BTRTUSA") moves pursuant to Rule 50(b) of the Federal Rules of Civil Procedure for judgment as a matter of law in its favor on its claims that defendants TRT USA Corp. ("TRT"), Guangming Sun, Mei Xu, and Pengtao Zhang (collectively "TRT people") engaged in unauthorized sales and the false designation of origin of Tong Ren Tang products. Alternatively, plaintiff BTRTUSA seeks a new trial on its Lanham Act claims against TRT and the TRT people.

Counter-defendants BTRTUSA and Chuanli Zhou move for judgment as a matter of law in their favor on claims brought against them by counter-claimants TRT and Guangming Sun. They do not, in the alternative, seek a new trial on the counter-claims brought against them. All requests by BTRTUSA for a new trial are limited to its Lanham Act claims against TRT and the TRT people.

The parties submitted briefs, and a hearing was held on July 15, 2011. The court now denies BTRTUSA's motion for judgment as a matter of law and the alternative motion for a new trial on the Lanham Act claims and grants in part and denies in part BTRTUSA's motion for judgment as a matter of law on TRT and Sun's counter-claims.

**I**

In 2005, BTRTUSA entered into a written agreement with Advantage United Corp., the predecessor of defendant and counter-claimant TRT, to cooperate in selling traditional Chinese medicine in the United States. On September 28, 2006, the parties entered into a new written agreement, superseding the 2005 Agreement. Under the terms of the 2006 Agreement, TRT was to be "the general exclusive agent to distribute the main Tong Ren Tang products that are brought into the U.S. market at various TCM [traditional Chinese medicine] clinics, websites, and dedicated sales counters for Tong Ren Tang products at drugstores and supermarkets within the U.S." 2006 Agreement § IV.

The parties' business relationship soured, resulting in two lawsuits. On December 10, 2008, TRT filed a complaint in state court against BTRTUSA. On February 27, 2009, BTRTUSA filed the instant action in federal court against TRT and three of its officers and directors, Sun, Xu and Zhang, alleging, among other things, violations of the Lanham Act (unfair competition, false designation of origin, false advertising). TRT and the TRT people filed a Second Amended

Counter-Claim against BTRTUSA and Zhou, alleging fraud, breach of fiduciary duty, misappropriation of trade secrets, defamation, trade libel, and intentional infliction of emotional distress. A jury trial was held on BTRTUSA's unfair competition claim and the counter-claims of TRT and the TRT people. On September 2, 2010, the jury found against BTRTUSA on its unfair competition claim. It also found in favor of TRT and against BTRTUSA and Zhou on TRT's fraud claim and awarded $1,322,500 in compensatory damages; in favor of TRT and against Zhou on TRT's breach of fiduciary duty claim and awarded $741,450 in compensatory damages; in favor of TRT and against BTRTUSA and Zhou on TRT's misappropriation of trade secret claim and awarded $188,837 in compensatory damages (the $188,837 against Zhou was included in the breach of fiduciary duty award against Zhou); in favor of TRT and Sun against Zhou and BTRTUSA on TRT's and Sun's defamation claims and awarded $12,777 to each counter-claimant. In addition, the jury assessed punitive damages in favor of TRT against Zhou in the amount of $21,000 and against BTRTUSA in the amount of $750,000, and in favor of Sun against Zhou in the amount of $9,000 and against BTRTUSA in the amount of $23,000. Counter-claimants were unsuccessful on their other claims.

## II

BTRTUSA and Zhou seek judgment as a matter of law on the issues decided against them on the basis that the jury lacked a legally sufficient evidentiary basis for its decision on each of those issues. Each of the contentions of BTRTUSA and Zhou will be addressed but in a different order than followed by BTRTUSA and Zhou in their moving papers.

**A. Failure of Unfair Competition Claim**

The jury found that BTRTUSA failed to prove one or more of the elements of its unfair competition claim. Although the evidence was persuasive that after the 2006 Agreement had expired by its terms (the evidence suggests it was repudiated earlier) TRT engaged in unauthorized sales of Tong Ren Tang products, there are nevertheless bases on which the jury could have reasonably concluded that BTRTUSA failed to prove its claim. For example, the jury may have found that BTRTUSA did not prove that *it had been or was likely to be injured* as a result of any false designation of origin or false advertisement.

3

1   On September 23, 2010, BTRUSA made a motion for an injunction precluding defendants
2 from, among other things, selling products with a traditional ingredient removed as Tong Ren Tang
3 trademarked products and requiring that defendants destroy such products in its inventory.
4 BTRTUSA argued that such an injunction was not inconsistent with the jury verdict, was necessary
5 to prevent irreparable harm to BTRTUSA, and was in the public interest. The motion was resolved
6 by an agreement that defendants TRT and the TRT people would not to sell or distribute Tong Ren
7 Tang products that had an ingredient removed. An order granting an injunction to that effect was
8 issued on October 29, 2010.

### B. Alleged Failure to Prove Fraud and Fraud Damages

TRT claimed that Zhou made the following fraudulent representations: (a) TRT would have an exclusive general distributorship for distributing all major Tong Ren Tang products in the United States; (b) Zhou would ensure compliance with all relevant United States laws and regulations; and (c) BTRTUSA would enforce Tong Ren Tang trademarks.

### 1. Exclusive General Distributorship

TRT successfully asserted before the jury that Zhou and BTRTUSA fraudulently represented that TRT was to be the exclusive general distributorship for all major Tong Ren Tang products in the United States. BTRTUSA asserts that the jury's finding of fraud is inconsistent with the summary adjudication order entered by the court on June 2, 2010. However, that order left open the issue of whether BTRTUSA entered into sales contracts with others besides TRT and continued to sell Tong Ren Tang products for which TRT had been promised an exclusive distributorship. There was sufficient evidence to allow a reasonable juror to conclude that Zhou made the promise of exclusivity with no intent to abide by it and that TRT was hurt thereby. *See, e.g.,* Tr. 584:11-588:18, 589:25-590:19, 595:7-25 and 863:4-866:7.

### 2. Zhou's Promise to Ensure Regulatory Compliance

TRT introduced sufficient evidence to support its fraud claim against Zhou based on his alleged false promise to ensure regulatory compliance. The evidence supported a finding that Zhou agreed to take responsibility for FDA compliance and customs clearance in his capacity as a director or fiduciary of TRT USA. This evidence was not barred by the parol evidence rule because it did

4

not contradict the provision in the 2006 Agreement that TRT had responsibility for "customs clearance for products at the US customs and FDA and other governmental departments." Ex. 2. Zhou promised as a fiduciary of TRT USA, not as a representative of BTRTUSA, to take responsibility for regulatory compliance and TRT justifiably relied on that promise. *See* Dkt. No. 147 Ex. A at 150.

### 3. Enforcement of Tong Ren Tang Trademarks

TRT's contention that BTRTUSA would enforce Tong Ren Tang trademarks is not supported by the evidence offered. Evidence that was presented showed that TRT wanted to ensure that BTRTUSA had authority from its parent in Beijing to enforce the trademarks (*see e.g.* Tr. 1581:13-1584:14) but there is no evidence that Zhou or BTRTUSA promised to go after or sue any particular suspected counterfeiters. Neither the 2006 Agreement (Ex. 2) nor other written documents reflecting divisions of labor showed that Zhou promised to enforce the Tong Ren Tang trademarks (*see e.g.* Ex. 169).

### 4. Loss of Profits Damages Are Speculative

The jury found that TRT was entitled to recover $1,322,500 in compensatory damages on its fraud claim. This damage award was apparently based on projected profits according to TRT's business plan. BTRTUSA argues that because the business plan was for a new venture in an area where TRT had no track record, lost profits damages are too speculative and cannot be awarded.

> It has been frequently stated that if a business is new, it is improper to award damage for loss of profits because absence of income and expense experience renders anticipated profits too speculative to meet the legal standard of reasonable certainty necessary to support an award of such damage. However, the rule is not a hard and fast one and loss of prospective profits may nevertheless be recovered if the evidence shows with reasonable certainty both their occurrence and the extent thereof.

*Gerwin v. Southeastern Cal. Ass'n. of Seventh Day Adventists*, 14 Cal. App. 3d 209, 221 (1971). Thus, while damages generally are not awarded for anticipated profits of a new business, this presumption may be overcome when there is concrete evidence allowing one to establish the amount of damages with reasonable certainty.

In this case, TRT has failed to provide sufficient evidence to establish lost profits with reasonable certainty. In fact, evidentiary support for a lost profits claim was totally lacking. The projection of lost profits was made on the basis of a speculative, grandiose business plan which made

5

assumptions that were totally unrealistic and unreasonably optimistic. The assumptions, among others, were that Tong Ren Tang products could be sold lawfully in the United States with labels and ingredients as in China, that the business could be run without any experienced employees and at the same time as another business (driving school), that sales would increase at an astronomical rate, that the business could be run without committed financing and without a detailed operational plan, that the business would attract major investors, that sales in the United States would be made as successfully as sales in China and that the business would not be impacted by competition from legitimate and illegitimate competitors. While in some circumstances, projected profits in a business plan may provide enough certainty regarding damages to overcome the absence of a proven track record, in this case, the profits projected by TRT's business plan are too speculative to meet the legal standard of reasonable certainty necessary to support an award of damages for lost profits.

Victor Republicano, counter-claimants' damages expert,[1] did testify to an alternative way of computing fraud damages which he termed the "unjust enrichment" or "monies that TRT paid but would not have paid but for the wrongdoing by the other party." Tr. 1813:4-6. These "unjust enrichment" damages compensated for money paid by TRT for product that was not delivered, payments for product received but not able to be used, payments for product held by governmental authorities at the border, a consulting fee paid to Zhou, a deposit on a product order that was cancelled and a label design fee paid to Zhou. The "unjust enrichment" damages totaled $141,168. The evidence was sufficient to support the conclusion that these damages were caused by Zhou's fraudulent representations and, therefore, since the evidence is sufficient to support that amount, the damages for fraud are $141,168.

### C.    Damages for TRT's Breach of Fiduciary Duty Claim

The jury found that TRT was entitled to recover $741,450 in compensatory damages from Zhou on its breach of fiduciary duty claim.[2] The jury also specified that the damages for fraud and

---

[1] The court excluded much of Mr. Republicano's proffered testimony because it lacked foundation and was not reliable.

[2] The court's corrected judgment (Dkt. No. 296) listed BTRTUSA as having been found liable on the breach of fiduciary duty claim. That is incorrect and the judgment filed in accordance with this order will reflect only Zhou as having been found lible on the breach of a fiduciary duty claim.

6

1 the damages for breach of fiduciary duty were for entirely separate losses. Dkt. No. 268 at 10. To
2 the extent that the jury awarded damages to TRT based on lost profits resulting from the failure to
3 ensure regulatory compliance and to provide exclusivity, these lost profits damages are speculative
4 for the reasons discussed above. As for damages based on Zhou's diversion of the allegedly
5 confidential plan to distribute Gummy Bear vitamins in China, TRT relies solely upon the testimony
6 of its expert, Mr. Republicano, to support its damage claim.

Mr. Republicano's testimony regarding lost profits suffered by TRT with respect to the distribution of Gummy Bear vitamins in China was based entirely on a business plan by IHI, a New York corporation, to sell such vitamins in China. Dkt. No. 256 at 1815:4-1816:9. Because TRT owned 50% of the shares of IHI, Mr. Republicano assumed that TRT would have received 50% of the profits of IHI. *Id.* at 1818:8-11. Because IHI's business plan involved the distribution of 50 products, only one of which was Gummy Bear vitamins, Mr. Republicano assumed that profits from the sale of Gummy Bear vitamins would constitute 1/50th of overall profits. *Id.* at 1818:4-7. IHI's business plan projected total profits of $1,306,000 million in year one, $11,685,000 million in year two, and $22,429,000 million in year three. *Id.* at 1821:16-24. Based on these projected profits, Mr. Republicano calculated TRT's lost profits from Zhou's diversion of the plan to sell Gummy Bear vitamins in China to be $359,940. *Id.* at 1824:15-18.

However, IHI, like TRT, was an unestablished business and lacked a track record. In fact, it never executed its plan to sell Gummy Bear vitamins or any other products in China. *Id.* at 1815:13-16. Mr. Republicano did not explain how the projected profits in the IHI business plan were calculated or why those figures were reliable estimates of anticipated profits. He was not a credible witness. In the absence of any evidence suggesting reliable underlying factual assumptions and a reliable methodology for projecting future profits, the profits projected by IHI's business plan are too speculative to meet the legal standard of reasonable certainty necessary to support an award of damages. It would also appear that if a damage claim were supported, it would belong to IHI, not TRT.

    **D.**    **TRT's Misappropriation of Trade Secret Claim**

7

The jury found that TRT was entitled to recover $188,837 in compensatory damages on its misappropriation of trade secret claim. In the supplemental verdict form, the jury clarified that the damages it awarded for breach of fiduciary duty included the damages for unjust enrichment it awarded for the trade secret misappropriation. Dkt. No. 268 at 10. TRT sought only unjust enrichment damages on its trade secret misappropriation claim. Nevertheless, TRT argues that even though the damages due to unjust enrichment are already accounted for in the damages awarded for breach of fiduciary duty, it should still receive the additional $188,837, as it could be an award based on lost profits resulting from the trade secret misappropriation. For the reasons explained above, TRT has failed to offer sufficient evidence to support an award of damages based on lost profits resulting from Zhou's misappropriation of the Gummy Bear Plan.

The calculation of damages for the unjust enrichment for the use by BTRTUSA and Zhou of the plan to sell Gummy Bear vitamins in China is not directly challenged by BTRTUSA and Zhou and is supported by some evidence. Therefore, TRT is entitled to recover $188,837 under its breach of fiduciary duty claim or its misappropriation claim but not under both.

### E. TRT's Defamation Claim & Sun's Defamation Claim

The jury found that TRT was entitled to recover $12,777 in compensatory damages on its defamation claim and that Sun was entitled to recover $12,777 in compensatory damages on his defamation claim. In the supplemental verdict form, the jury clarified that the damages it awarded TRT for its defamation claim were entirely separate from the damages awarded to Sun for his defamation claim. Dkt. No. 268 at 11. BTRTUSA contends that TRT and Sun failed to offer sufficient evidence to support the damages they were awarded on their defamation claims. However, BTRTUSA overlooks the fact that damages for defamation may be assumed. The court gave the following jury instruction based on instruction 1702 of the Judicial Council of California, Civil Jury Instructions (CACI 2003) to which BTRUSA and Zhou made no objection:

> Even if the parties have not proved any damages for harm to reputation or shame, mortification or hurt feelings, the law assumes that they have suffered this harm. *Without presenting evidence of damage*, they are entitled to receive compensation for this assumed harm in whatever sum you believe is reasonable.

Dkt. No. 267 at 43 (emphasis added); *see also* Dkt. No. 191 at 19; CACI 1702. Similar jury instructions regarding presumed damages on defamation claims have been upheld by the California

8

1  Court of Appeal. *See Sommer v. Gabor*, 40 Cal. App. 4th 1455, 1472-73 (1995). Accordingly,
2  BTRTUSA has no basis for quarreling with the amounts awarded to TRT and Sun because the
3  evidence on damages was insufficient. The court does not find the amounts unreasonable.

### F. Punitive Damages

BTRTUSA and Zhou contend that the jury's punitive damage awards are grossly excessive and thus unconstitutional. As stated above, the jury assessed punitive damages in the following amounts: (1) $21,000 in favor of TRT and against Zhou; (2) $750,000 in favor of TRT and against BTRTUSA; (3) $9,000 in favor of Sun and against Zhou; and (4) $23,000 in favor of Sun and against BTRTUSA.

The court can reduce a constitutionally excessive punitive damages award to a constitutionally permissible amount without allowing the option of a new trial. *See Ross v. Kansas City Power & Light Co.*, 293 F.3d 1041, 1049-50 (8th Cir. 2002). The Supreme Court has instructed courts reviewing punitive damages to consider the following three guideposts: (1) the degree of reprehensibility of the misconduct, (2) the disparity between the actual or potential harm suffered and the punitive damages award, and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases. *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 418 (2003). Of these three factors, the most important to consider is the degree of reprehensibility of the misconduct. *Id.* at 419. In determining the reprehensibility of the misconduct, courts are to consider whether: "the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident." *Id.*

BTRTUSA and Zhou only address one of the three guideposts set forth by the Supreme Court – the ratio between compensatory and punitive damages. The Supreme Court has observed "in practice, few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process." *Id.* at 425. However, even if the only damage claim by TRT on its fraud claim was for lost profits which it did not prove, it would have been

9

entitled to nominal damages. Nominal damages alone can support an award of punitive damages. *See Werschkull v. United Calif. Bank*, 85 Cal. App. 3d 981 (1978) (affirming award of $1.00 for actual damages and $550,000 in punitive damages against Bank which had diverted pension funds but there was no way of knowing to what extent beneficiaries were injured).

The punitive damages awards of $21,000 in favor of TRT and $9,000 in favor of Sun against Zhou are within constitutional limits. His conduct, as found by the jury, was sufficiently reprehensible to justify the award. It involved fraud, breaching a fiduciary duty and defaming a company and its principal officer. The award also falls within the guideline ratio between punitive and compensatory damages mentioned in *State Farm.*

The award against BTRTUSA does raise constitutional issues. BTRTUSA's liability is based solely on Zhou's actions taken by him on behalf of BTRTUSA. Although Zhou's title was that of vice-president of BTRTUSA, he appears to have been the only officer or agent responsible for its actions. No evidence of the financial condition or net worth of BTRTUSA was presented. BTRTUSA was a recently formed subsidiary of Beijing Tong Ren Tang, a worldwide distributor of Chinese herbal medicines located in China, but no evidence was presented that the parent controlled Zhou's actions or profited from his actions. It appears that what the jury did was to treat BTRTUSA as one and the same with its parent and assessed punitive damages against BTRTUSA as if it had the wealth of the parent company in China. The court reduces the punitive damages award of $750,000 in favor of TRT against BTRTUSA to $21,000 and the punitive damages award of $23,000 in favor of Sun to $9,000. Awarding punitive damages against BTRTUSA for more than awarded against its officer responsible for the wrongful conduct without showing any net worth or financial condition of the company does not seem justified. However, since they are not one and the same entity, the awards are not joint.

### III

An amended judgment will be entered in accordance with this order.

DATED: 11/23/2011

RONALD M. WHYTE
United States District Judge